This is 2-18-1008-3, DeMarion B. Minor. People in the state of Illinois Petitioner Atholete, Maurice B. Respondent of the Council. DeMarion B. Minor for the people of the state of Illinois, Illinois Petitioner Atholete being Maurice B. Respondent of the Council. And today, Maurice B. Junior, Minor, the people of the state of Illinois, Petitioner Atholete, Maurice B. Respondent of the Council. On behalf of the Respondent of the Council, Mr. Andrew J. Bella. And on behalf of the Petitioner Atholete, Mr. Stephen Wilder. Mr. Bella, you may proceed. Please. Good morning, Your Honors. Andrew Bella for Maurice B. Thank you for allowing me to argue today. Thank you for the counsel. Initially, I believe it's important to note that parents have a fundamental liberty interest in the care, custody, and control of their children, which is protected by the due process clause. I think there's two arguments for reversal in this case. First, my client, in my opinion, Mr. Bowdoin, Mr. B., was not proven unfit by clear convincing evidence. There was one witness at the fitness trial. She testified that she was not very familiar with the Miner's case. She was a caseworker. She provided no real firsthand knowledge of that part of the case. And she really provided foundation for some documentary evidence. And I believe that that evidence is hearsay. I know it's an exception to the hearsay rules of business record. But I don't believe that hearsay alone can constitute clear convincing evidence. Secondly, at the best interest stage, there was testimony that the foster parents were unsure if they were going to adopt the Miners. The court often argues that the Miners have to have stability and that's why the case has to be resolved in a timely manner. However, in this case, termination didn't really provide the Miners stability as they're in foster homes and those foster parents did not affirm or deny whether or not they were going to adopt those children. So I think that best interest was proved as well. I guess more importantly though, I believe that the court clearly committed a reversible error. I would dismiss my client's attorney on the day of trial. Yeah, let's talk about that. I think that's the critical issue in this case. There was admittedly no compliance with Rule 13. Is that correct? Yes, Your Honor. So knowing that, which is obviously problematic, I think it's an exception. What I'm wondering is, and isn't there a third district case, can the case be affirmed because the evidence would be so strong, the argument could be made the result would have been the same even if the attorney is there. Is that something that enters into the mix here at all? I think generally it does. However, I did find a case that's, I think, really on point with this case. I don't think that will come into it when it was a situation like this where the attorney was dismissed on the day of trial and that my client's ability to have a defense was prejudiced at trial. Do you have any cases that say that at your fingertips? I do. I have N. Ray Robert S. and S.S. 357, Illhab III, 214. And that says what? That was a situation almost exactly the same, except for in that case, the appellant's attorney actually filed a notice of withdrawal, but the appellant did not show up at trial. The court granted a motion of withdrawal and then perceived a termination hearing on the same day. And without going into analysis as whether or not there was enough, it was harmless error. The court reversed the judgment for termination based on that fact alone, that they granted a motion of withdrawal and then perceived that same day to hearing. And that was a case where the attorney actually gave a notice of withdrawal and was sent to the client, client found it here, and then the court granted a motion of withdrawal. In this case, there was no notice to the client. There was no motion filed before or after the withdrawal. So you're saying your case is stronger here? Yes, I believe, because in this case, there was no notice to the client, no motion, nothing in writing as required. No notice to the parent that the attorney was going to withdraw. The attorney didn't ask to withdraw in this case. The court did on its own. All right, let me ask you this. Do you look at the third district case of NRA SP? I believe so. I don't remember off the top of my head exactly what that... The same procedure, the rule was not followed. Did not follow rule 13 on the allegation was in that case that the trial court erred. Termination ended up being affirmed by the appellate court. You're not familiar with that case? Not off the top of my head. I don't believe... I cited in the state's brief. It may be. I don't believe it's a case where the attorney was granted a motion to withdraw on the day of the termination period, and then the termination went forward that same day. And I don't think in this case, you're able to know what would have happened because, in theory, my client's attorney could have presented witnesses, they could have presented evidence, they could have argued the case. We don't know because they were disappointed. So you're all in on the lack of compliance with rule 13. And by that, I mean, you're saying, apparently, you believe that no set of evidence, no amount of evidence would ever be sufficient if you had these circumstances where the attorney's gone on the day of trial and the defendant doesn't know about it, or the respondent doesn't know about it, right? These exact same sort of guesses. Now, if he was dismissed, you know, a month before trial, that's different, and the attorney and the client knew about it, but... So the strength of the evidence, you would argue, is irrelevant once that happens? Yes, because we don't know what the attorney would have done. He could have presented evidence, he could have presented witnesses, and he could have argued the case. In this case, I think even argument would have mattered because, as you can see in the record, the court admitted evidence after the termination, after the unwritten stage, and then immediately made a decision without, it appears without, looking into the evidence. So, I mean, I think even argument could have helped. But we don't know what would have happened. It's impossible to tell if my client's attorney would have had witnesses or evidence to present, so you can't tell how strong the evidence would have been. Okay. And that's really the strength of the case, and it's the argument that there's no set of facts that, if it was exactly like this scenario, that would allow the judgment to get further. We apparently have no further questions. You can stand there if you want, or you can sit down. I'll do my time right now. Okay. You'll have an opportunity to make rebuttal. Thank you. Mr. Rogers, you may proceed. Good morning, your honors, counsel. May it please the court. My name is Steven Rogers, and I represent the people of the state of Illinois. And as Justice Hudson recognized, in RESP, the court did conduct a harmless error analysis and talked about the minimal kind of nature of the error, the chance that it would have erroneously deprived the defendant of his fundamental right to the care, custody, and control of his child. Should the court be encouraged to ignore a rule? No, your honor. Should we make a decision? Should we countenance the fact that the rule in this case was not complied with, A, and B, counsel, make sort of a compelling argument, this happened on the day of the trial. There was no opportunity or even knowledge of the respondent to get another attorney. Correct? Correct, your honor. What about, what if he thinks that the attorney is gonna be there to represent him? He's assuming he's going to be there. And now, according to this procedure, it proceeds, he doesn't know that the attorney's not there. Somebody's not there. You don't see that as a problem at all? Your honor, I would have two responses. First being, this was the fourth consecutive date that the respondent had missed. So this was not a situation where he's involved and then misses one court appearance where he thinks his appearance may be waived. This is the fourth consecutive appearance. Do you know what the odds are if you flip a coin and it comes up four times tails? What do you think the odds are that on the fifth time it'll come up heads? Still 50%. That's right. So the fact that he flipped a coin four other times doesn't really mean too much. And considering the fact that the four other times there was an attorney present who represented his interests, but in this instance there was none, and considering that we should put another way, we presume that defendants know the law because they're told what it is because it's contained in statutes and rules, case law. And if the rules that set forth what their rights are aren't followed, then they're put in a position where they could easily be prejudiced by having virtually no defense at all. And that's what happened here if you accept the fact that there was no attorney, he was not given notice that there was not going to be an attorney, there was no order entered by the court ordering the clerk to send notice of the withdrawal or the order of withdrawal, and this man, this person, was put in a position where he was totally in the dark, he was ignorant of the fact that the attorney who was supposed to be there representing him like he did the four previous times would not be there to at least test the case that the state presented. And so, plain error talks about error that may change the result, but there's also a second form of plain error, and that's where the integrity of the system is called into question. And I'd like you to comment on how you think that the integrity of the system has not been compromised by the scenario of events that took place here. Your Honor, the state has recognized throughout that the Supreme Court rule was not followed. What I would say is the defendant was represented for approximately 644 days. He, there were two different permanency review periods, the second of which, during that period, the defendant had been arrested and he pled guilty for aggravated battery of the children's mother. On the three previous dates, it's recognized the defendant may start relying on that. Presumably, the trial court should have had the attorney withdraw one of the prior three proceedings, but this is also not a situation where the respondent was actively interacting with his trial counsel in the expectation that she would present the case. It was essentially that he had completely absented himself, was not working with his attorney, and specifically on the September 25, 2018 court appearance, trial counsel said, I've tried to contact him at every single phone number. He's no longer residing at the address on record, and the trial court even asked the children's mother if she knew where he was at, and she said she did not, and the caseworker had not been contacted by a respondent, and so the two options, say the attorney just continued to represent him. It's unclear what an attorney who hasn't spoken to their client in three or four months, what kind of witnesses that attorney may call, or what type of meaningful cross-examination could have occurred. It sounds like you're implying that any attempts at notification would have been a nullity, or the term used sometimes is impossible or impossibility. Am I correctly reading your response to suggest that our concerns about due process and notification and opportunity to be heard would only be satisfied if there was notice by publication because there was no other means? Well, Your Honor, there wasn't notice by publication in this case for these three children to whom it all may concern. I'm talking about notice of publication of the trial date. There was, in this case, Your Honor, on October 12th, October 19th, and October 26th. That's on a common law record, page 164. It was to whom all it may concern. And it referenced these three minor children, and it listed the trial date. Did it reference the defendant and also inform him that he was no longer represented by appointing the prosecutor? It did not, Your Honor. Let me ask you about this. Obviously, you're relying on a third district case, as you would because it ostensibly supports your position, but in that case, was the attorney forced to withdraw on the day of trial? No, Your Honor. I believe there was a period of time in the middle of the proceedings, and then the respondent had showed back up, and then he was reappointed counsel at that time. So this case is at least distinguishable on that basis. Yes, Your Honor. If there were fairly extensive periods of time in In re SS, SPX. Yes, Your Honor. Yeah, I wasn't sure if it was, I know it was multiple months, but I don't know exactly the timeframe, but I know he did bounce back. What about the argument that the defendant, he's not there, and you're suggesting that when he deliberately absented himself from the proceedings, maybe he thinks, you know, well, you know, there's a warrant out if I arrest him, there's some other problem, that would, you know, impinge on his right to be there, ability to be there, and he thinks an attorney's gonna be there representing him. He would never know it, and this is a real goodie. Your Honor. How do you know the attorney's not in the case anymore? Well, Your Honor, the only thing I can say is that on the three previous dates, the attorney specifically told the court, he is not in contact with me. I'm trying to reach out to phone numbers. So. That may be true, but the respondent doesn't know that he's gonna withdraw, does he? No, the respondent wouldn't know that the attorney's gonna withdraw, but the respondent knows he's certainly not helping his cause by not communicating with the attorney. That would be true. Yes. I bet, did the trial judge make a record as to when the last contact was? Not a specific date, Your Honor. The trial counsel mentions, the last time I talked to him was at his arraignment. Well, he's charged in April of 2018. It's not clear exactly when he's arraigned, but by August 10, it appears the trial counsel, let's see. Trial counsel on August 10th has said, I have not spoken to him for some time. So whether that's sometime in that period between April 18th and August 10th, but I don't believe anyone indicates after August 10th that there's been any contact with the defendant, whether it's through his lawyer, the case worker. I take it you have found no cases that would approve this procedure where the withdrawal came on the day of trial. Not this exact factual scenario, Your Honor. So this factual scenario is a case of first impression? I believe so, Your Honor. Okay. I thought there's a well-settled doctrine that Supreme Court rules are not merely advisory. They have to be followed. Does that enter into this at all? Well, Your Honor, I think the state agrees that the trial court should have followed the Supreme Court rules. With that being said, the trial court did not do so. So we're at the point where was it prejudicial that the trial court didn't do so? And the state's position is based on the strength of the evidence and defendant's decisions to absent himself from the proceedings. Both of those, cumulatively, defendant's due process, or respondent's due process rights were not. I should probably ask other counsel this question. So your position is that prejudice is a component part of the analysis. We can't reverse unless prejudice is shown? Is that your position? Yes, Your Honor. Okay. Did you want to address the manifest way to the evidence? Your Honors, I think the second two issues are the typical issues this court would deal with on a factual basis. The trial court's decision was not, the opposite conclusion is not clearly apparent. Especially, I'll focus on the second period for progress, which spanned from November 22nd, 2017 to August 22nd, 2018. And in that period, a respondent is arrested for aggravated battery of the mother. And at that point, from April on, he's discharged from two different services, both based on life of attendance and incarceration. And there's no indication between April and August of 2018 that respondent ever re-engaged to potentially reunify with the children. And similarly, on the best interest decision, the children had recently been placed in new settings, but in both situations, the testimony was that the foster parents were providing a safe place for going to school. And there was really no evidence to the contrary that- There was not, Your Honor. Let me ask you this about, as you can tell, I'm really hung up on the rule here. Counsel for the father, whether appointed or retained, has certain obligations, separate and apart from what the trial judge tells him or her to do. How do we countenance that? Your Honor, it would probably be a similar answer to the other ones. This was the fourth appearance where trial counsel- It's not about the dad. We have an attorney who has an obligation to follow the rules, particularly when it is to do with the attorney-client relationship. And we have an attorney here who says, okay, you vacated it, I'm done. Is that effective? I mean, do we question the conduct of the trial counsel who is ready, willing, and able, and ignores his or her obligation under the rules? Your Honor- I mean, I appreciate that's a little bit outside the box here, but it's part and parcel. I mean, you represent a client. You've taken on that appointment, or you've been retained. When that relationship ends, you have certain obligations. No, even if the trial judge doesn't expect you to do it. Yes, Your Honor. Should we not look at that? Your Honor, trial counsel, unfortunately, the withdrawal happens on the day of the hearing. Well, wait, but that's another little issue. There was no withdrawal here. I vacate your appointment. Yes, Your Honor. And under the statute, the trial court may require appointed counsel to withdraw. To withdraw, right. Yes, Your Honor. And counsel does not fulfill his or her obligations to their client. Yes, Your Honor. Potentially, trial counsel did reach out and let him know what the result was. But that would be outside the record. It would be outside the record, but we do know a respondent does file the notice of appeal, so he apparently did get some notice of the trial court result. And it was pretty quickly after the- A few days before the 30-day mark, I believe. It was towards the end of December. So we can't find him for all these dates in between, but within 20, let's say 27, 28, whatever, days after this event takes place, defendant is not only aware of it, but takes affirmative action to try to rectify it. Yes, Your Honor. Okay. Well, it's difficult because it's entirely because- I get you. Well, because respondent was not around from August 10th through November, it's unclear what was going on, if he was following the proceedings from a distance, not wanting to show up to court, or if he was just, I'm out of here, and then all of a sudden, once he finds out, hey, your rights were terminated, you know, panic sets in, I mean, it's, yeah.  to the vacation of his appointment on the day of trial if he hasn't sent notice that he is no longer the attorney of record? It's a difficult question, Your Honor. As the statute says, the trial court may require counsel to withdraw, so- But he didn't do that here. The trial judge said, I vacate your appointment. And I'm not trying to put you on a hotspot here, but we have a peculiar set of facts. And he doesn't, if he'd said, I'm gonna make you withdraw, then counsel says, you gotta give me a date to send notice. But he says, I'm gonna vacate that, does that matter? I'm not sure, Your Honor, and it may be the trial counsel took that as, I'm withdrawing from the case, but of course, it was not the trial counsel's affirmative decision to withdraw. And certainly, it may have been better to allow her to cross-examine the witnesses. As the states argued, it would not have helped respondent's case. In our opinion, see my time is up, the state respectfully requests that this court affirm the trial court's judgment. Thank you. Mr. Villa? I would respond by saying that there was argument that if I noticed a motion of withdrawal had been sent, it wouldn't have gotten to my client. But I think that's contradicted by the fact that my client filed his own pro se notice of appeal somehow within that 30 day time period. Presumably, he called the attorney to, or contacted the attorney for that, because there was no, even a notice of the withdrawal itself sent to my client after the fact. So, I don't think that, I mean, I think there'd be speculation saying he wouldn't get it, but I think the facts actually show that he would have gotten it. Counsel, you've heard opposing counsel talk about the SP decision, in which they did go into a prejudice analysis. So, is it your position that the mere fact that the rule was violated, there's an arguable due process, that ends the inquiry, the matter should be sent back, and we should not get into the prejudice component? Is that your position? Not always, but in this specific fact pattern, I believe so, because we don't know what would have happened if the attorney was there. It's not a case where a trial was held, and the attorney was gone way ahead of time, and the client knew about it. This is the day of trial, no notice to the client, attorney's gone, and again, it's speculation. We don't know if he would have presented witnesses, or evidence, or again, at least argued, what to test the state's case. So, I don't think we can do an analysis without knowing what would have happened. And in the case I cited, it was fairly similar. The respondent parent had not shown up since August. The motion to withdraw was filed in November, and in that case as well, the court granted a motion to withdraw on the same day, on the perceived same day, and there was no analysis in that case as to prejudice, or harmless error, because, I believe because of the same thing, I believe it was fairly egregious, and you really can't tell what would have happened without an attorney there, without the parent knowing that there was no attorney there. Okay. So, yeah, respectfully I would ask that. Did you ever find any case that might be analogically similar relating to prosecution of criminals in absentia, wherein a defendant failed to appear, and his attorney withdrew, or was told his appointment was vacated on the day of trial? I did not, Your Honor. I looked at only termination of criminal rights cases, because there may be something similar in the criminal statute, but I know there's something in the Juvenile Court Act that allows the court to force the attorney to withdraw. I don't think that would apply in the criminal code. Okay. I have some doubts about that. Thank you. So, your defense, I would ask that you reverse the decision. Thank you. We'll take the case under advisement. There'll be a recess. We have one more case in the file.